Eric D. Olson, State Bar No. 198373
LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660
Telephone:  (949) 250-9954
Facsimile:   (949) 250-9957
Email:   eolson@lhlaw.com

Keith Fichtelman, State Bar No. 262476
LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017
Telephone: (213) 623-2221
Facsimile:  (213) 623-2211
Email:   keith.fichtelman@lhlaw.com

Attorneys for Korea Trade Insurance Corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOREA TRADE INSURANCE CORPORATION, a Korean Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BH REAL ESTATE INVESTMENT LLC, a Delaware company; AJG HOLDINGS LLC, a California company; JLAG INVESTMENT LLC, a California company; CHONG WOEN LEE, an individual; MICHAEL & KAINSAN CAPITAL, LLC, a Delaware company,<br><br>Defendants. | Case No.:   3:17-cv-00639-L(RBB)<br><br>**FIRST AMENDED COMPLAINT FOR :**<br><br>**1. AVOIDANCE AND RECOVERY OF TRANSFER PURSUANT TO CAL. CIV. CODE § 3439.04**<br><br>**2. AVOIDANCE AND RECOVERY OF TRANSFER PURSUANT TO CAL. CIV. CODE § 3439.05** |

1

**FIRST AMENDED COMPLAINT**

Plaintiff, Korea Trade Insurance Corporation (which does business under and is commonly referred to in the marketplace by the trade name "K-sure") (hereinafter, "K-sure"), alleges as follows:

## THE PARTIES

1. K-sure is a corporation duly organized under the laws of the Republic of Korea ("Korea"). K-sure is an export credit agency that focuses on promoting trade and overseas investment of enterprises in Korea.

2. Defendant BH Real Estate Investment LLC ("BHRE") is a Delaware company which property records show is the former recorded owner of a real property located at 16128 Rambla De Las Flores, Rancho Santa Fe, California (the "Rambla Property").

3. Defendant AJG Holdings LLC ("AJG") is, or was, a California company that previously was the recorded owner of the Rambla Property prior to transferring the property to BHRE on or about August 31, 2016.

4. Defendant JLAG Investment LLC ("JLAG") is, or was, a California company that acquired the Rambla Property on or about May 8, 2015. On information and belief, JLAG may have been a prior name of AJG or was a separate entity.

5. Defendant Michael & Kainsan Capital, LLC, ("MKC") is a Delaware company that acquired title to the Rambla Property from BHRE on or about March 23, 2017.

6. Defendant Chong Woen Lee (aka Jong Won Lee aka John Lee) ("Lee") is an individual who resides in San Diego County, California, at the Rambla Property. At all relevant times, Lee was an officer and/or director of ON Corporation ("ON Corp"). On information and belief, at all relevant times, Lee was an officer, member, and/or principal of MKC, BHRE, AJG, and/or JLAG.

2
**FIRST AMENDED COMPLAINT**

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the Defendant Lee as he is domiciled in the State of California, residing in San Diego County, California.

8. This Court has jurisdiction over Defendants BHRE, AJG, JLAG, and MKC as they are, or were, the owners of the Rambla Property, which is located in San Diego County, California. Additionally, AJG and/or JLAG are, or were, California companies.

9. The Court has subject matter jurisdiction over this matter pursuant to Title 28 of the United States Code section 1332(a) as K-sure's claims relate to the Rambla Property which has a value in excess of $75,000 and there is complete diversity as K-sure is a Korean entity, whereas the Defendants are California and/or Delaware residents.

10. Venue is proper in this Court under Title 28 of the United States Code section 1391 as the Defendants reside, own property, or have owned property within this judicial district.

## FACTUAL ALLEGATIONS

**Occurrence of Debt**

11. One of K-sure's primary functions is to act as an insurer which underwrites a program of insurance and insurance-like products in Korea whereby K-sure guarantees that Korean exporters of goods and/or their financing banks will receive payment for goods from foreign importers who purchase such goods.

12. On or about April 2, 2014, K-sure entered into an "Export Credit Guarantee (NEGO)" agreement with the Industrial Bank of Korea ("IBK") relating to the export of RCA branded televisions by a Korean company, ON Corp, to Sears in the United States. On or about the same date, K-sure issued a Letter of Export Credit Guarantee (collectively with the Export Credit Guarantee

1  (NEGO), the "Credit Agreements") to IBK with a credit facility limit of
2  $18,000,000.

3      13.    The "Export Credit Guarantee (NEGO)" is one of the trade insurance
4  and export credit guarantee products provided by K-sure pursuant to Korea's
5  Trade Insurance Law. This product works in conjunction with financing provided
6  to an exporter by its financing bank, in which the bank takes assignment of the
7  right to receive payment from the importers to repay the loan. However, in the
8  event that the importer fails to pay, the exporter becomes obligated to pay the
9  financial institution. The Export Credit Guarantee (NEGO) product guarantees
10 payment to the financial institution.

11     14.    K-sure therefore guarantees payment to the financing banks with the
12 Export Credit Guarantee (NEGO) product, but it in turn protects itself by
13 obtaining guarantees from the exporter and its principals to indemnify K-sure in
14 the event of a call upon the Export Credit Guarantee (NEGO) by the financing
15 bank.

16     15.    Thus, at or about the same time as K-sure was issuing the letter of
17 export credit guarantee to IBK, ON Corp issued a Letter of Subrogation to K-
18 sure, and it guaranteed and indemnified K-sure in the event of a call on the Export
19 Credit Guarantee (NEGO).

20     16.    Concurrently with ON Corp's company guarantee, Lee also
21 personally indemnified K-sure by entering into an indemnity agreement and
22 issuing a personal guarantee to K-sure guaranteeing payment of any amounts
23 owed by ON Corp to K-sure under these agreements.

24     17.    K-sure is informed and believes and on that basis alleges that as of
25 no later than April 2015, Lee knew, or should have known, that ON Corp would
26 be unable to meet its financial obligations under the Credit Agreements.

27     18.    K-sure is further informed and believes and on that basis alleges that
28

4
**FIRST AMENDED COMPLAINT**

as of no later than April 2015, Lee knew, or should have known, that K-sure would have the right to make demands on Lee's personal guarantees and indemnities because ON Corp would be unable to meet its own financial obligations to which Lee had issued the guarantees and indemnities.

19. On July 27, 2015, IBK called on the Export Credit Guarantee (NEGO) by providing notice to K-sure of a right to payment under the Credit Agreements. On August 31, 2015, IBK demanded payment from K-sure in the amount of $9,277,258 and interest due under the terms of the Credit Agreements.

20. When it received notice of the call on the Export Credit Guarantee (NEGO), K-sure exercised its contractual right to seek an in-advance payment from ON Corp based on the indemnity agreement. ON Corp, however, only paid the sum of $231,931.45, far less than the claim amount.

21. In or about September 2015, K-sure performed its obligations under the Export Credit Guarantee (NEGO) and provided payment to IBK in the total amount of $9,311,178.89. This payment triggered K-sure's contractual rights to separately seek indemnity for its losses against both ON Corp and Lee.

22. K-sure then made demands on ON Corp, the company guarantor, and Lee, pursuant to Lee's personal guarantee, for repayment of the amounts K-sure paid to IBK. Neither ON Corp nor Lee made such payment to K-sure.

23. Lee's personal guarantee is independently enforceable and actionable, separate and apart from the guarantee and indemnity agreed to by ON Corp. Lee's liability is not contingent on the resolution of any litigation or disputes between K-sure and ON Corp.

24. On October 20, 2016, K-sure therefore filed a lawsuit against Lee in Korea seeking reimbursement pursuant to Lee's personal guarantee of the amounts paid by K-sure to IBK. The case was entitled *Korea Trade Insurance Corporation v. Chong Woen Lee*, 26th Civil Division of the Seoul Central District

5
**FIRST AMENDED COMPLAINT**

Court, Case No. 2016Gahap562712.

25. The Korean court entered judgment in K-sure's favor on December 16, 2016, ordering Lee to pay to K-sure the sums of $9,079,247.44 under the personal guarantee and 1,477,100 Korean Won (KRW)[1] for costs of litigation. In independent legal proceedings filed in this judicial district, K-sure is seeking judicial recognition of this judgment against Lee under California's Uniform Foreign-Country Money Judgments Recognition Act (Cal. Code Civ. Proc. § 1713, *et seq.*).

**The Rambla Property**

26. On or about March 11, 2015, Lee purchased the Rambla Property from the Edward McTaggart Trust. Thereafter, Lee recorded his purchase and ownership of the Rambla Property with the County of San Diego.

27. On or about March 13, 2015, Lee's wife, Eun Ryeong Lee, signed an Interspousal Transfer Grant Deed transferring any interest she had in the Rambla Property to Lee. The deed was recorded with the County of San Diego on or about May 7, 2015.

28. On the following day, May 8, 2015, Lee transferred his interest in the Rambla Property to JLAG by way of quitclaim deed. The transfer was recorded on or about May 11, 2015.

29. The quitclaim deed transferring the Rambla Property to JLAG indicates no transfer tax was assessed on the transfer, and on information and belief, Lee did not receive any consideration for his transfer to JLAG, and he continued to reside in the Rambla Property following the transfer to JLAG.

30. On information and belief, at an unknown date between May 8, 2015 and August 31, 2015, JLAG either was renamed AJG and/or transferred its

---

[1] Based on the prevailing exchange rate of 1 USD to 1,186.44 KRW on December 16, 2016 (source: www.exchange-rates.org), this would equal $1,244.98.

ownership in the Rambla Property to AJG.

31. On or about May 5, 2015, a mortgage for the Rambla Property with BOFI Federal Bank was recorded with the County of San Diego. The mortgage was in the amount of $2,351,250.

32. On or about August 31, 2016, AJG and/or JLAG transferred its/their interest in the Rambla Property to BHRE by a grant deed that was recorded on September 2, 2016. The transaction was signed by both Lee and his wife as officers of AJG and BHRE. The recorded transfer also indicated that the transfer was exempt from transfer tax under California Revenue and Taxation Code 11925 because the transfer did not result in a change of the beneficial ownership interest of the Rambla Property.

33. On information and belief, no consideration was paid or received for the transfer of title to the Rambla Property to BHRE, and Lee continued to reside in the Rambla Property following the transfer to BHRE.

34. On or about March 23, 2017, BHRE transferred its interest in the Rambla Property to MKC. On information and belief, no consideration was paid or received for the transfer of title to the Rambla Property to MKC, or in the alternative, MKC was not a bona fide purchaser for value. On further information and belief, Lee continues to control the Rambla Property following the transfer to MKC, and the transfer to MKC did not result in a change of the beneficial ownership interest of the Rambla Property.

35. The Rambla Property was recently listed for sale on the Multiple Listing Service ("MLS") real estate listing service. The Rambla Property was delisted shortly before the transfer to MKC, prior to which it was listed at $4,875,000. As of April 14, 2017, the Rambla Property was re-listed at a price of $4,750,000. Both before and after the transfer to MKC, the seller was and remains represented by California Real Estate Broker Brian McCray of Spirit

Realty Inc.

36. On further information and belief, the recent transfer to MKC was done for the express purpose of further concealing and insulating the Rambla Property from the reach of Lee's creditors such as K-sure and avoiding a potential attachment or levy against the Rambla Property on account of Lee's debts. Lee continues to control the Rambla Property in all material respects, notwithstanding the series of transfers, including the most recent transfer to MKC.

## FIRST CAUSE OF ACTION

## AVOIDANCE AND RECOVERY OF TRANSFER WITH ACTUAL INTENT TO HINDER, DELAY, OR DEFRAUD A CREDITOR UNDER CALIFORNIA'S UNIFORM VOIDABLE TRANSFER ACT (CAL. CIV. CODE § 3439.04)

(Against All Defendants)

37. K-sure re-alleges and incorporates by reference the allegations contained in paragraph 1-36, inclusive.

38. The transfers of the Rambla Property by Lee to JLAG and the subsequent transfer(s) to AJG, BHRE, and/or MKC were made with the actual intent to hinder, delay, or defraud creditors, including K-sure.

39. The transfers of the Rambla Property by Lee to JLAG and the subsequent transfer(s) to AJG, BHRE, and/or MKC were made without receiving a reasonably equivalent value in exchange for the transfer.

40. At the time the subject transfers were made, Lee knew, or should have known, as an officer and director of ON Corp that ON Corp would be unable to meet its financial obligations and Lee's personal guaranties and indemnities would make him subject to substantial debts in the then near future. Moreover, Lee knew, or should have known, that once K-sure demanded payment on Lee's guaranties and indemnities that Lee would be insolvent.

41. Further, the transfers of the Rambla Property were made to entities owned and/or controlled by Lee or other related entities. Lee also retained possession and continued to use the Rambla Property as his residence after the subject transfers occurred.

42. On information and belief, the subject transfers were completed in order to obfuscate and conceal Lee's ownership and control of the Rambla Property in order to hinder, delay, or defraud creditors, including K-sure.

43. K-sure was harmed, and will continue to be harmed, by the subject transfers as they will hinder, if not prohibit, K-sure's ability to collect amounts owed to it by Lee.

44. The subject transfers constitute a transfer of property prohibited by California's Uniform Voidable Transfer Act codified as California Civil Code sections 3439, *et seq*.

45. Therefore, the following transfers should be voided in order for K-sure to properly reach the Rambla Property to recover outstanding debts owed by Lee to K-sure:

    a. The May 8, 2015, transfer by Lee to JLAG.

    b. Any subsequent transfer by JLAG to AJG.

    c. The August 31, 2016, transfer by JLAG and/or AJG to BHRE.

    d. The March 23, 2017, transfer by BHRE to MKC.

## SECOND CAUSE OF ACTION

**AVOIDANCE AND RECOVERY OF TRANSFER WHICH RESULTED IN INSOLVENCY OF DEBTOR OR WHILE DEBTOR WAS INSOLVENT UNDER CALIFORNIA'S UNIFORM VOIDABLE TRANSFER ACT (CAL. CIV. CODE § 3439.05)**

(Against All Defendants)

46. K-sure re-alleges and incorporates by reference the allegations

contained in paragraph 1-36 and 38-45, inclusive.

47. The transfers of the Rambla Property by Lee to JLAG and the subsequent transfer(s) to AJG, BHRE and/or MKC, resulted in Lee becoming insolvent and/or were made while Lee was insolvent.

48. The transfers of the Rambla Property by Lee to JLAG and the subsequent transfer(s) to AJG, BHRE, and/or MKC were made without receiving a reasonably equivalent value in exchange for the transfer while Lee knew, or should have known, that would leave Lee unable to satisfy outstanding debts owed, or which Lee knew would soon be owed, to K-sure.

49. At the time the subject transfers were made, Lee knew, or should have known, as an officer and director of ON Corp that ON Corp would be unable to meet its financial obligations and Lee's personal guaranties and indemnities would make him subject to substantial debts in the then near future. Moreover, Lee knew, or should have known, that once K-sure demanded payment on Lee's guaranties and indemnities that Lee would be insolvent.

50. K-sure was harmed, and will continue to be harmed, by the subject transfers as they will hinder, if not prohibit, K-sure's ability to collect amounts owed to it by Lee.

51. The subject transfers constitute a transfer of property prohibited by California's Uniform Voidable Transfer Act codified as California Civil Code sections 3439, *et seq*.

52. Therefore, the following transfers should be voided in order for K-sure to properly reach the Rambla Property to recover outstanding debts owed by Lee to K-sure:

    a. The May 8, 2015, transfer by Lee to JLAG.

    b. Any subsequent transfer by JLAG to AJG.

    c. The August 31, 2016 transfer by JLAG and/or AJG to BHRE.

**FIRST AMENDED COMPLAINT**

        d. The March 23, 2017, transfer by BHRE to MKC.

WHEREFORE, K-sure prays for judgment as follows:

1. Avoidance of the following transfers:

    a. The May 8, 2015, transfer by Lee to JLAG.

    b. Any subsequent transfer by JLAG to AJG.

    c. The August 31, 2016, transfer by JLAG and/or AJG to BHRE.

    d. The March 23, 2017, transfer to BHRE to MKC.

2. Costs of suit, including reasonable attorneys' fees; and

3. Such other relief as the Court deems just and proper

Dated: April 20, 2017        **LEE, HONG, DEGERMAN, KANG & WAIMEY**

By: /s/ Eric D. Olson
      Eric D. Olson
      Keith H. Fichtelman

Attorneys for Plaintiff
Korea Trade Insurance Corporation

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

11

**FIRST AMENDED COMPLAINT**